[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-15744
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 24, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A079-437-584,
A079-437-585

NESTOR NECHEPORENKO,
PEDRO NECHEPORENKO,
NITZA NECHEPORENKO,
JUANA MANUELA NECHEPORENKO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 24, 2009)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Nestor Necheporenko, a citizen of Peru, seeks review of the Board of Immigration Appeals' ("BIA") decision dismissing his appeal of the Immigration Judge's ("IJ") order denying his application for asylum, withholding of removal and relief under the United Nations Convention Against Torture ("CAT").[1] After review, we dismiss in part and deny in part the petition for review.[2]

## I. BACKGROUND

According to Necheporenko's application and hearing testimony, members of the Shining Path, a terrorist group, appeared at his car repair business in Lima, Peru in March 1999. The Shining Path told Necheporenko to make monthly payments of approximately $100 to them. Necheporenko testified that the Shining Path survived by demanding a "quota" from people and that the Shining Path members came to his business "because they realized that [his] business was going very well." Necheporenko began making the monthly payments to the Shining Path. However, in August 1999, he stopped making payments because his business was not doing well.

---

[1]Necheporenko's wife, Juana Manuela, and his two children, Pedro and Nitza, were included on the asylum application as derivative beneficiaries. Although our opinion refers to Necheporenko, our holding as to the asylum and CAT claims applies equally to his family. In addition, "there are no derivative benefits associated with a grant of withholding of removal." Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007). Thus, we deny the petition as to his family's claim of withholding of removal on that basis.

[2]Where, as here, the BIA issues its own decision and does not expressly adopt the IJ's decision or reasoning, we review only the BIA's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

2

In September 1999, Necheporenko arrived at work to find the locks on his doors broken and the words "The Shining Path is alive" painted on his wall. In October 1999, he began receiving phone calls from the Shining Path demanding to know why he had stopped making his payments and threatening to blow up his business if he did not resume. Finally, in December 1999, Necheporenko was locking up his shop door when he heard gunshots and one of the bullets struck the door. Necheporenko dropped to the ground and then heard a car accelerate and leave the scene.

In February 2000, Necheporenko entered the United States with authorization to remain until August 2000. Necheporenko overstayed his visa and, in March 2003, filed his application for asylum, withholding of removal and CAT relief.

The IJ found Necheporenko's testimony credible, but nonetheless concluded that Necheporenko was ineligible for the relief requested. The IJ concluded that Necheporenko's asylum claim was time-barred because he did not file his application within one year of entering the United States and there was no evidence of changed conditions in Peru or of extraordinary circumstances that prevented Necheporenko from filing. As to Necheporenko's withholding of removal claim, the IJ concluded that the threatening phone calls and harassment he described did not rise to the level of past persecution and that Necheporenko had not shown that

3

the shooting incident at his business was attributable to the Shining Path. Alternatively, the IJ concluded that Necheporenko had not shown a nexus between any harm he may have suffered and a protected ground and that the Shining Path's interest in him appeared to be based on economic motives. The IJ determined that Necheporenko was ineligble for CAT relief because he had not shown that a public official or anyone acting with the consent or acquiescence of public officials would seek to harm him for any reason.

The BIA dismissed Necheporenko's appeal. The BIA concluded that there was no error in the IJ's determination that Necheporenko's asylum claim was time-barred and that Necheporenko had not shown changed country conditions or extraordinary circumstances. As to withholding of removal and CAT relief, the BIA concluded that there was no error in the IJ's "findings of fact regarding [Necheporenko's] past experiences in Peru and in his conclusions regarding the likelihood of [Necheporenko] being harmed in the future on account of a protected ground." Necheporenko filed this petition for review.

## II. DISCUSSION

### A. Asylum and CAT Claims

As a threshold matter, we lack jurisdiction to review the determinations that Necheporenko's asylum application was not timely filed and that he failed to show extraordinary circumstances or changed country conditions that justified his

4

untimely filing. See Immigration and Nationality Act ("INA") § 208(a)(3), 8 U.S.C. § 1158(a)(3); Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956-57 (11th Cir. 2005). Additionally, we lack jurisdiction to consider Necheporenko's CAT claim because he did not raise it before the BIA. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006) (explaining that this court lacks jurisdiction to review a claim not raised before the BIA even if the BIA sua sponte considered it). Thus, we dismiss Necheporenko's petition as to his asylum and CAT claims.

## B. Withholding of Removal Claim

To establish eligibility for withholding of removal, an applicant must show that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The applicant bears the burden to show that it is "more likely than not" that he has been or will be persecuted on account of one of the five protected grounds in his home country. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (hyphens omitted); 8 C.F.R. § 208.16(b)(1)-(2). We will not reverse a finding that an alien failed to demonstrate a nexus between the alleged persecution and the alien's actual or imputed political opinion unless the evidence compels the conclusion that the alien has been or will

5

be persecuted "'because of' his political opinion." Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007).[3]

To establish persecution on account of political opinion, the applicant must show that he was persecuted or fears future persecution because of his own actual or imputed political opinion, not because of his persecutor's political motives. INS v. Elias-Zacarias, 502 U.S. 478, 482, 112 S. Ct. 812, 816 (1992). Thus, to show persecution by a guerilla group on account of a political opinion, it is not enough to show that the petitioner has been or will be targeted "due to [his] refusal to cooperate with the guerillas"; instead, the petitioner must show that the guerillas have targeted or will target him because of his actual or imputed political opinion. Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004).

Furthermore, evidence of acts of private violence or criminal activity does not demonstrate persecution on a protected ground. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006). Thus, being targeted for extortionate purposes does not constitute persecution on account of political opinion. See Rivera v. U.S. Att'y Gen., 487 F.3d 815, 821-23 (11th Cir. 2007) (concluding that persistent

---

[3]In addition to political persecution, Necheporenko's application asserted a claim of persecution on account of membership in a particular social group. We lack jurisdiction to review this claim because Necheporenko failed to exhaust it before the BIA. See Amaya-Artunduaga, 463 F.3d at 1250. Furthermore, on appeal, Necheporenko does not assert his social-group-persecution claim with respect to withholding of removal. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that a petitioner abandons an issue by failing to offer argument on it).

demands by guerillas to prosperous businessman to pay "war tax" and threats against family was not persecution "on account of" a political opinion).

Substantial evidence supports the IJ's finding that Necheporenko was a victim of extortion by the Shining Path and not political persecution. Necheporenko does not claim that he engaged in any political activity or that the Shining Path ever referred to his political beliefs. Instead, Necheporenko testified that the Shining Path targeted him because it needed money to survive and his business was prosperous. Even assuming the Shining Path was responsible for shooting at Necheporenko, the threatening phone calls and shooting incident occurred only after he stopped making the quota payments. These facts demonstrate that the Shining Path's motive was economic and not political. Thus, because the evidence does not compel a conclusion that Necheporenko has suffered or more likely than not will suffer persecution on account of his political opinion, we deny the petition as to his application for withholding of removal.[4]

**PETITION DISMISSED IN PART and DENIED IN PART.**

---

[4]Because substantial evidence supports the finding that Necheporenko failed to show a nexus between the Shining Path's treatment of him and his political opinion, we do not address the alternative finding that the incidents Necheporenko described do not rise to the level of persecution.